## BECKWITH, ET AL. V. BALDWIN.

1. A demurrer to the declaration does not reach the objection that the cause of action is one, for which attachment will not lie. The proper mode of presenting that question is by a rule on the plaintiff, to show cause why his attachment should not be disvlosed.

2. When an attachment is sued upon a debt not due, the declaration should not be filed until the maturity of the contract.

3. One employed to act as pilot on a steamboat, who is willing, and ready, and offers to act as such, but whose services are refused, may, after the expiration of the term of service, recover the value of his services in *indebitatus assumpsit*, and need not alledge any excuse for not performing the contract on his part.

Writ of Error to the County Court of Mobile.

THE defendant in error caused an attachment to be issued against the plaintiff, upon an affidavit that they were "indebted to him in the sum of $524 50, of which sum $74 50 is now (then) due, and the further sum of $450 will become due on the 1st day of May next, (1846,) and that said Jacob Beckwith, Frank Rodgers, Elisha Rodgers, and Charles Rodgers, are about to remove their property out of the State,

and that thereby this affiant will probably lose the debt, or have to sue for it in another State." The declaration is entitled of the June term of the county court, holden in 1846, and embraces counts for the following causes : 1. For work and labor done, &c., by the plaintiff about the defendant's business, and alledges an indebtedness on the 1st day of May, 1846. 2. The second count is similar to the first, save only that it alledges an indebtedness on the first day of January, 1846, in sum of $74 50. 3. This count states an indebtedness on the 1st day of May, 1846, in the sum of $520 50, " for the work and labor, care and diligence, journeys and attendance, had and done by the plaintiff, in and about the business of the defendants, as a pilot on board the steamer Clermont, of which the said defendants are owners, &c.

From a bill of exceptions sealed at the defendants' instance, it appears that when the cause came on for trial, the defendants moved to quash the writ of attachment, because it issued before a debt had been created ; which motion was overruled. The plaintiff then introduced the deposition of J. A. Case, and the defendants objected to the admission of the special contract contained therein ; but their objection was overruled, and the contract read to the jury, and is as follows: " Mobile, Dec'r 12, 1845. I do hereby promise to pay Henry C. Baldwin, $150 per month as first pilot of the steamboat Clermont, from the time that said boat commences to run on the Warrior river until the 1st of May, 1846, provided the said boat does not sink or burn up—then his wages cease, should the boat be lost while running from Mobile to Tuscaloosa.                    J. A. CASE, Master

of the Steamboat Clermont.

In the deposition of the same witness there is set out a written contract between himself and the defendant Beckwith, by which the witness was to become the master of the Clermont, to employ boatmen, officers, &c.; and to run it on the Black Warrior river, between Mobile and Tuscaloosa, for the period embraced by the agreement between the plaintiff and witness; unless the boat should be lost, or the contract rescinded as therein provided.

91

Plaintiff also proved by two other witnesses, that in January, after the hiring took place, and before this suit was commenced, the plaintiff offered to perform service on the Clermont, or on any other boat for the defendants ; but they refused to receive his service, or to employ him in any other manner, and he was not afterwards called on by them to act as a pilot, or in any other capacity.

The court charged the jury, that if Case employed the plaintiff for the whole season, being authorized to do so, and the plaintiff was willing and ready to perform his contract, but was prevented by the defendants, he might recover in this form of action, notwithstanding he was discharged by the defendants in January, and rendered no farther service.

Thereupon the defendants prayed the court to charge the jury : 1. That the contract produced was an entire contract, and no suit could be brought until the expiration of the time mentioned therein. 2. That if in such a case as the present a suit might be commenced, it could not be instituted by attachment. 3. That the contract was special and the plaintiff could not recover in this action. All which were refused, &c.

The judgment entry recites that the defendants' demurrer to the declaration was overruled, the cause submitted to a jury, who returned a verdict for the plaintiff for $532 80 damages, on which judgment was rendered. The assignment of error questions the correctness of the ruling of the county court, in overruling the motion to quash the attachment, in overruling the demurrer, and in charging and refusing to charge the jury.

P. PHILIPS, for the plaintiffs in error, made the following points : 1. The contract is entire, and no action could be maintained upon it, until the expiration of the time for which the plaintiff's services were engaged. True, the plaintiff might have elected to treat the contract as rescinded, but then he should proceed for some special damage, or upon an *indebitatus assumpsit ;* in either of which the recovery would be limited to the service rendered, or the damage sustained.

The commencement of the suit before the time when the service was to be performed, had expired, and the filing common counts indicates the election to rescind, and limits the recovery to the damages to that time.

2. The attachment law allows such process to issue "although the debt or demand be not due, and declares the attachment shall be a lien on the property levied on, until the "debt or demand becomes due." This shows that there must be a "debt or demand," though it may be payable at a future time. At the time the suit was commenced, there was no present liability upon the written contract; and as an indebtedness was to depend upon performance, or some after act, it could not be assumed that there was a "debt or demand" to become due afterwards.

3. The act of 1833, which declares that it shall not be required of the plaintiff to file his declaration "before the first term of the court after such action falls due," does not authorize the plaintiff to recover a "debt or demand," which accrues after the attachment issued. By the terms "such cause of action," we are to understand that on which the attachment was founded. The case relied on from 4 East's R. 75, is a decision applicable to the *latitat*, or original writ in the English common pleas. [Foster v. Bonner, Cowp. Rep. 454.]

4. A servant or agent wrongfully dismissed, has three remedies—1. He may sue immediately for a breach of the contract. [Payan v. Gandolfo, 2 C. & P. Rep. 370.] 2. He may treat the contract as rescinded, and sue on a *quantum meruit* for work and labor done. [Planet v. Colburn, 8 Bing. Rep. 14.] 3. He may wait until the expiration of the time for which he is hired, and then sue in *indebitatus assumpsit* for his entire wages. [Gandell v. Ponligus, 4 Camp. Rep. 375; see Arch v. Homer, 3 C. & P. Rep. 349.] If the plaintiff was entitled to recover any thing, it was wages for the service actually performed. [See 21 Wend. Rep. 462; 7 Ala. Rep. 257.]

5. Where a special contract has been performed, so that the liability to pay the money has become absolute, *indebitatus assumpsit* will lie; but if the contract is still open, or is to be performed in future, the count must be framed on the

Beckwith, et al. v. Baldwin.

contract. [Crammer v. Graham, 1 Blackf. Rep. 406; 2 Greenl. Ev. 78; Clemens v. Eslava, 4 Porter's Rep. 504; Hunter v. Waldron, 7 Ala. Rep. 753; Davis v. Ayres, 9 Id. 292; Snedicor v. Leachman, 10 Id. 332.]

6. The contract being for a definite time at $150 per month, is entire, and no action can be maintained for a part of the aggregate sum without a renunciation of the right to the residue. [Norris v. Moore, 3 Ala. Rep. 676; Givhan v. Dailey, 4 Id. 336; Davis v. Preston, 6 Id. 83.]

J. A. CAMPBELL, for the defendant in error, insisted that the law authorizing an attachment to issue, "although the debt or demand" of the plaintiff was not due, sustains the regularity of the proceeding. [3 Caine's Rep. 323; 4 Mart. Rep. (La.) 517; Serg. on Attach. 44, *el seq.*] But if this be not so, the objection to the attachment was not made in the proper manner, and cannot now be raised. [Jordan v. Hazard, 10 Ala. Rep. 221.]

The statute authorizes the declaration to be filed on the liability as it stands after the maturity of the debt, (Clay's Dig. 333, § 113,) and the objection that the suit was brought before the cause of action accrued cannot avail, where it is necessary to proceed by attachment to secure the plaintiff's rights or give him an effectual remedy. [4 East Rep. 74.]

Under a declaration alledging the performance of an act, it is allowable to give evidence of an excuse for its non-performance. [1 Stew. & P. Rep. 249; 3 Phil. Ev. C. & H's Notes, 116; 1 Stark. Rep. 198; 3 Ala. Rep. 181; 7 Ala. R. 952; 9 Id. 292.]

The question as to the measure of damages is not raised by the bill of exceptions, and the verdict shows that the entire sum agreed to be paid, was not recovered. It is admitted that the plaintiff, if dismissed by the defendants without a cause, is entitled to recover to some extent—upon this admission, no question is raised as to the extent of the recovery.

COLLIER, C. J.—The act of 1833, "concerning attachments," provides that "a writ of attachment may in all cases issue against the property of a debtor legally subject to the

process of attachment, although the debt or demand be not due; which attachment shall be a lien on the property attached, until such debt or demand becomes due, when judgment shall be rendered and execution issued." [Clay's Dig. 56, § 7.]

In Jordan v. Hazard, 10 Ala. Rep. 221, it is said that a motion to quash an attachment is not revisable on error, and the regularity of the process cannot be questioned by a demurrer to the declaration; for this would only bring to view the declaration itself. But it was added, the defendant whose estate has been attached for a cause not authorized by law, was not remediless; "and we think the mode adopted in Pennsylvania, by a rule on the plaintiff to show cause why his attachment should not be dissolved, judicious and proper." Our statute uses the term "debt or demand," and requires the plaintiff or his agent "to swear to the amount of the sum due," and as this could not be done where the damages were uncertain, it would seem to follow that an attachment would not lie. But the introduction of the term "demand" into the act, indicates that the legislature did not intend to confine the remedy to those cases where a debt, in the technical sense of the term, existed. *Further*, an attachment is intended to coerce an appearance where the personal service of process cannot be effected, and a reasonable interpretation of the act requires an extension of the remedy to all cases of contract, where by the terms of the contract, or the law acting upon it, the amount due, or the damages resulting from a breach are ascertained. This conclusion is warranted by the considerations we have stated, as well as the necessity from which it will often relieve a party of invoking the extraordinary powers of chancery. [Weaver v. Puryear & Williamson, 11 Ala. Rep. 941.] In addition to this, it may be remarked that the act cited, declares "the attachment law of this State shall not be rigidly and strictly construed." [Clay's Dig. 59, § 17.]

It will be observed, that the defendant did not ask a rule on the plaintiff to show cause why the attachment should be dissolved; and if the refusal to quash could be revised, we should be compelled to decide that the motion was rightly denied. The affidavit affirms the indebtedness of the de-

fendant in a sum certain, states how much is due and when the residue will become due, the writ conforms to it; and upon their face the proceedings are altogether regular, so, that if the demurrer to the declaration could reach them, they could not be affected by it. Looking to the affidavit and attachment alone, we discover nothing of which their irregularity can be predicated—they are fully supported by the seventh section of the attachment law.

If the damages claimed by the plaintiff were ascertained by the terms of the contract on which he placed his right to recover, it will follow from the citations we have made, that the remedy pursued is altogether proper. To this question, as well as the adaptation of the declaration to the proof, we will now address ourselves. By a statute passed in 1832, it is enacted, that "It shall not be required of the plaintiff, in any suit by attachment, founded upon a cause of action not due, to file his pleadings before the first term of the court, after such cause of action falls due, and the same may be dated as of the term when filed. [Clay's Dig. 333, § 113.] This provision was doubtless intended to enable the plaintiff to declare upon the cause of action as it exists after maturity of the debt or demand, where an attachment has previously issued, so that he set out his "debt or demand" as past due, instead of becoming due *in futuro.*

In McLendon v. Godfrey, 3 Ala. Rep. 181, we said, "if the defendant has prevented a performance, under such circumstances as would entitle the plaintiff to recover as much as he would, had the contract been entirely executed on his part, then perhaps it may be unnecessary to alledge in the pleading any matter of excuse. [5 B. & C. Rep. 638 ; 2 D. & R. Rep. 357. See further on this point, Poague v. Richardson, Litt. Sel. Cases, 134; Holt v. Cueme, Id. 499.] So where the plaintiff is prevented from the performance of a verbal contract by the defendant, a recovery may be had on the money counts, in assumpsit, when the damages resulting from a breach are not unliquidated. Accordingly, it has been held, that a contract to pay a gross sum for the teaching of certain pupils for an entire session of a school, if they are taken away without any fault of the teacher, or other occurrence which entitled the parent to consider the contract as

rescinded, the teacher may recover the entire sum agreed to be paid. See also, 1 Chit. Plead. 298 ; 1 East's Rep. 58 ; 11 Id. 285 ; 1 Taunt. R. 12 ; 5 B. & C. Rep. 638.

In Davis v. Ayres, 9 Ala. Rep. 292, it was decided that where there was an express agreement for particular services for a definite time, and the defendant discharged the plaintiff before the time has elapsed, so that he is prevented from performing the services, he must declare on the special agreement. But if the plaintiff does not seek redress until after the time has expired, *indebitatus assumpsit* will lie. See also 1 N. Rep. 330 ; 2 Stark. Rep. 227 ; 2 B. & P. Rep. 582. In the case cited from 9 Ala. Rep. we held, that where one party stipulates with another, to pay him fifty dollars *per month*, for four months, for his services as a clerk in a store, and then refuses to allow the services to be performed, without a sufficient cause, the party engaged as a clerk may immediately commence an action against his employer, and recover not only the damages sustained by the breach of contract, at the time suit was brought, but such as may be developed up to the time of the trial.

If the plaintiff offered to perform his contract, was willing and ready to do so, and the defendant refused to receive his services, there can be no doubt but he is entitled to recover the sum agreed to be paid him. It was competent to have sued upon the refusal of the defendant to allow the plaintiff to enter upon the employment agreed on either by suit instituted in the ordinary form, or by attachment. This point is too clearly and unquestionably settled by our own decisions, and the statute regulating proceedings by attachment, to require a further remark in its support.

In respect to the declaration, we have seen that the statute does not require it to be filed, until after the expiration of the period when the service was to have been rendered ; and that after that time the plaintiff, upon showing that he was, without, cause prevented from performing his part of the contract, may recover for work and labor, &c. The declaration is unobjectionable in itself, and the demurrer to it was properly overruled. No question is raised upon the record as to

the authority of Case to bind the defendant by the contract which he entered into with the plaintiff. That was doubtless a conceded point, or satisfactorily proved.

The record does not bring to our view an available error, and the judgment of the county court is therefore affirmed.